## HARPER et ux. v. OVER.

### No. 1625.

Court of Civil Appeals of Texas. Eastland.

Feb. 5, 1937.

Kirby, King & Overshiner, of Abilene, for appellants.

Davidson & McMahon, of Abilene, for appellee.

GRISSOM, Justice.

Appellee, R. L. Over, filed this suit against appellants, Geo. W. Harper and wife, and others. Plaintiff's petition consists of three counts: (1) An action in trespass to try title; (2) to remove cloud; and (3) for partition. Harper and wife answered by a plea of not guilty and a general denial. The defendants, other than the Harpers, have not appealed, and it will not be necessary that they be further mentioned. The case was tried before the court without a jury, and judgment was rendered for the plaintiff as prayed for.

H. V. Pannell and wife constitute the common source of title. They were the owners in fee simple of the land in controversy on December 12, 1914, and on that date executed a warranty deed conveying said land to Geo. W. Harper. On November 21, 1923, Harper and wife, by warranty deed, conveyed the land to R. H. Mathews. As a part of the consideration for such conveyance Mathews executed five vendor's lien notes for $1,113.60 each, the first of said notes being due January 1, 1925, and one of said notes being due on the first day of January of each year thereafter to and including January 1, 1929. The deed recited that the grantor, Harper, retained a $\frac{1}{16}$ interest in the minerals, etc., in the land conveyed. This recital was the result of a mutual mistake. Grantors and grantee intended that grantors should retain a $\frac{1}{2}$ interest in the minerals, instead of a $\frac{1}{16}$ interest. Harper assigned the notes to Cunningham, who, on May 1, 1924, assigned the last three of said series of vendor's lien notes (the first two of said series having been paid) to E. C. Thorne. Thorne had constructive notice of the recited reservation of a $\frac{1}{16}$ interest in the minerals, etc., in the deed from Harper to Mathews, but Thorne had no notice, either actual or constructive, of any mistake in the recital in said deed, and did not know of the mistake made in said deed; that is, that Harper, in the deed to Mathews, intended to reserve a $\frac{1}{2}$

interest in the minerals. It is undisputed that Thorne was an innocent purchaser for value without notice of such intent. On April 21, 1924, Mathews and wife conveyed the land in controversy to W. I. Thorne, trustee for the benefit of E. C. Thorne, beneficiary, to secure the payment of the notes purchased by Thorne from Cunningham, which deed of trust expressly subrogated and carried forward said three vendor's lien notes and lien. Said deed of trust on its face purported to convey the entire land, without excepting any mineral interest therein. On July 9, 1924, E. C. Thorne conveyed said deed of trust indebtedness, amounting to $3,500, to the Lincoln National Life Insurance Company. The fact that Thorne and said Life Insurance Company had no notice, either actual or constructive that Harper, in conveying the land to Mathews, intended to retain any greater interest in the minerals than was recited in said deed, is not disputed.

Thereafter, a correction deed was executed by Harper to Mathews, showing the mistake made in the deed executed in 1923, and showing that it was then intended by said parties that a ½ interest instead of a ⅟₁₆ interest in the minerals was retained by Harper. On May 7, 1935, the land was sold under the powers contained in the deed of trust, and at such sale the property was purchased by the plaintiff R. L. Over. At the time of such purchase by Over he had both actual and constructive notice of such correction deed, and of Harper's claim to a ½ interest in the minerals.

The court's findings of fact include the above statement of the facts of this case.

■ That a subsequent purchaser, with notice of outstanding equities, who buys from a bona fide purchaser without notice takes title freed of such equities was announced by Judge Pleasants in the following language: "It is * * * well settled that, if a subsequent purchaser with notice acquires title from a former purchaser, who bought for value and without notice, such subsequent purchaser succeeds to all the rights of his grantor. When land once becomes freed from equities by a bona fide purchase by one having no notice of the equities, such purchaser obtains a complete jus disponendi, and any one who takes title from him takes it free from said prior equities, notwithstanding he may have notice thereof at the time he buys." (as found in)

Kinard v. Sims (Tex.Civ.App.) 53 S.W. (2d) 803, 806. See Grace v. Wade, 45 Tex. 522; Sanger v. Thomasson (Tex.Civ. App.) 44 S.W. 408, 410; Hawkins v. Western Nat. Bank of Hereford (Tex.Civ. App.) 146 S.W. 1191, 1193; Edmondson v. Williams (Tex.Civ.App.) 295 S.W. 295; Pure Oil Co. v. Swindall (Tex.Com.App.) 58 S.W.(2d) 7; Garrison v. Crowell, 67 Tex. 626, 4 S.W. 69; Hill v. Moore, 62 Tex. 610; 43 Tex.Jur. § 364, p. 618, et seq.; 66 C.J. § 1045, p. 1188 et seq.; Id. § 905, p. 1092; 27 R.C.L. § 449, p. 684; Maupin on Marketable Title (3d Ed.) p. 186 et seq.

■ Appellants apparently recognize the correctness of the stated rule, but say that the doctrine of caveat emptor applies to all sales under judicial foreclosure, and contend that such rule should be applied to sales under powers contained in a deed of trust, with the result that Over, being a purchaser at such a sale with knowledge of the rights of the appellants to ½ of the minerals, acquired only ½ of such minerals, instead of ¹⁵⁄₁₆ interest therein, as awarded him by the judgment of the trial court. In an attempt to sustain such contention, appellants cite 35 C.J. 75, 76; 26 Tex. Jur. 545, 546; Oberthier et al. v. Stroud, 33 Tex. 522; 66 C.J. 1332, 1333; 29 Tex. Jur. 957; 19 R.C.L. 622, 623. In reply, appellee says: " * * * the rule of caveat emptor, as applied to a judicial sale, protects the trustee, receiver, executor or other administrative officer functioning at the sale in lieu of the record owner of the property being sold, and applies with respect to any warranty or covenant which purports to bind such administrative officer."

He cites 41 C.J. 996, wherein it is said: "The purchaser at a valid foreclosure sale under a power in a mortgage or deed of trust acquires, * * * *all the title originally conveyed by the mortgage or deed.* * * * *Nor will the rights of the purchaser be affected by any act of the mortgagor after the execution of the mortgage.* * * * But the rule of caveat emptor applies to such sales, *and the trustee or mortgagee making the sale is not ordinarily liable to him for any defects in the title.* * * *"

In Hampshire v. Greeves, 104 Tex. 620, 143 S.W. 147, 150, our Supreme Court, in discussing the rights of a junior lienholder, said: "The right of sale given in a mortgage is a valuable right acquired by contract inuring to the mortgagee, *and cannot*

*be impaired by any subsequent act of the mortgagor with regard to such property."*

It quoted from Jones on Mortgages, § 1897, as follows: "The purchaser (under foreclosure proceeding by sale under the power given in the mortgage) takes the mortgagor's title divested of all incumbrances made since the creation of the power. * * * A sale regularly exercised under a power is equivalent to strict foreclosure by a court of equity properly pursued."

We are of the opinion that one who purchases at a deed of trust sale, although he has notice of outstanding equities in a third party, acquires the property free thereof where the owner of the debt and lien is a bona fide mortgagee, for value, without notice of such outstanding equities, such as the mortgagee admittedly is in this case.

We think such conclusion is required if effect is to be given to the authorities hereinafter discussed.

"The title of the foreclosure purchaser is not affected by his knowledge of adverse claims or equities * * where the mortgagee, when he accepted the mortgage, was ignorant or not chargeable with knowledge of them. * * * He is not chargeable with notice of a deed recorded after the mortgage. * * *" 42 C.J. § 1915½ (b) p. 263.

In Bergen v. Producers' Marble Yard, 72 Tex. 53, 11 S.W. 1027, 1028, J. T. Smith executed a note to Cy. T. Smith and secured it by a mortgage upon his stock of merchandise. On maturity of the note, suit was filed and judgment had for the debt and foreclosure of the mortgage lien. The stock was sold under the decree of foreclosure. At the sale, appellee, a creditor, gave notice that it would contest the validity of the sale. "Bergen, the appellant, and who at once bought the stock, was present at the sale, and had notice that the creditors would attack the proceedings and sale as fraudulent." Upon a trial of the right of property, judgment was against Bergen. The mortgage was attacked as being security for a fictitious debt. There was evidence that the full amount of the note was owing and that Cy. T. Smith "obtained the security in ignorance of any other than honest intent on part of his brother in giving the security." Our Supreme Court said:

"While notice is brought home to Bergen, still his title would be good if it came through an honest vendor. If Cy. T. Smith took the mortgage for an honest debt, and without notice of any intent to defraud on part of his grantor, then Bergen's title would be good."

The case was reversed because the charge made Bergen's title dependent upon notice to him.

In Keyser v. Clifton et al. (Tex.Civ. App.) 50 S.W. 957, 958, it was said: "It appears from the record that the question of notice to Brooks, the mortgagee, was ignored in the trial, the issue being made upon the notice to appellant. If, as found by the court, Brooks had no notice of the family relations of William Clifton, appellant should have recovered, no matter if he did have full notice of such relations, for the simple reason that, *Brooks being an innocent holder of the mortgage, the foreclosure of lien and sale thereunder invested the title in the purchaser, regardless of what he knew about the title. In other words, the bona fides of Brooks would have passed over to the purchaser at his foreclosure sale."* (Italics in the opinion are ours.)

In Grace v. Wade, supra, it was held that a purchaser with notice of an adverse claim to an execution sale of land upon which the creditor has established his lien takes as good title as if the creditor had himself become the purchaser. There the plaintiff excepted to defendant's answer (which answer was, in effect, that plaintiffs-in-execution had no notice of the defendant's claim) because it was not alleged that the defendant, the purchaser at the sale, had no notice of plaintiffs' title before his purchase at the execution sale. Such exception was sustained and the answer excluded, for which action of the court the judgment was reversed.

"If the judgment creditor by virtue of his lien * * * is entitled to protection as against outstanding equities or an unrecorded deed, the purchaser at the execution sale will succeed to his rights and take free of prior equities, even though he had notice thereof at the time of the sale." 27 R.C.L. p. 681, § 446. Also, see 66 C.J. § 1045, p. 1188.

The judgment of the district court is affirmed.